**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

ENVIRONMENTAL INTEGRITY PROJECT,        )
1000 Vermont Avenue NW, Suite 1100      )
Washington, DC 20005,                   )
                                        )
CLEAN AIR COUNCIL,                      )
135 S. 19th Street, Suite 300           )
Philadelphia, PA 19103,                 )
                                        )
AIR ALLIANCE HOUSTON,                   )
2520 Caroline Street, Suite 100         )
Houston, TX 77004,                      )
                                        )
CHESAPEAKE CLIMATE ACTION NETWORK       )
6930 Carroll Ave, Suite 720             )
Takoma Park, MD 20912,                  )
                                        )
EARTHWORKS,                             ) Civil Action No. 1:20-cv-3119
1612 K Street, NW, Suite 808            )
Washington, DC 20006,                   ) **COMPLAINT FOR DECLARATORY**
                                        ) **AND INJUNCTIVE RELIEF**
ENVIRONMENT AMERICA,                    )
1543 Wazee Street, Suite 410            )
Denver, CO 80202,                       )
                                        )
ENVIRONMENT AMERICA d/b/a               )
ENVIRONMENT TEXAS,                      )
200 East 30th Street                    )
Austin, TX 78705,                       )
                                        )
HOOSIER ENVIRONMENTAL COUNCIL,          )
3951 N. Meridian, Suite 100             )
Indianapolis, IN 46208,                 )
                                        )
PENNENVIRONMENT,                        )
1429 Walnut Street, Suite 1100          )
Philadelphia, PA 19102,                 )
                                        )
TEXAS CAMPAIGN FOR THE ENVIRONMENT, )
105 W. Riverside Drive, Suite 120,      )
Austin, TX 78704,                       )
                                        )
            _Plaintiffs_,               )

```
                                    )
        v.                          )
                                    )
ANDREW WHEELER, in his official capacity as   )
Administrator, United States Environmental    )
Protection Agency,                  )
Office of the Administrator, Mail Code 1101A  )
1200 Pennsylvania Ave., N.W.        )
Washington, DC 20460,               )
                                    )
                Defendant.          )
_____  )
```

## INTRODUCTION

1.       With this action, Plaintiffs Environmental Integrity Project, Clean Air Council,

Air Alliance Houston, Chesapeake Climate Action Network, Earthworks, Environment America,

Environment Texas, Hoosier Environmental Council, PennEnvironment, and Texas Campaign

for the Environment ("Plaintiffs") seek to compel the U.S. Environmental Protection Agency

(EPA), through the Defendant EPA Administrator Andrew Wheeler ("Administrator" or

"Defendant"), to fulfill long-delayed nondiscretionary duties and review the general control

device requirements for flares under the New Source Performance Standards (NSPS) and the

National Emission Standards for Hazardous Air Pollutants (NESHAP) ("NSPS General Flare

Requirements" and "NESHAP General Flare Requirements," respectively).

2.       The Administrator has failed to meet continuing nondiscretionary duties under the

Clean Air Act to review the NSPS General Flare Requirements and NESHAP General Flare

Requirements in accordance with sections 111(b)(1)(B) and 112(d)(6) and, where appropriate or

necessary, to revise them within the time required by the Clean Air Act. 42 U.S.C. §§

7411(b)(1)(B), 7412(d)(6). Specifically, EPA has not conducted the statutorily mandated review

of either the NSPS General Flare Requirements or the NESHAP General Flare Requirements

within the last eight years, as required by Clean Air Act sections 111(b)(1)(B) and 112(d)(6). *Id.*

In fact, based on Plaintiffs' review of publicly available records, it is apparent that the Administrator has not conducted the statutorily mandated review of the NSPS General Flare Requirements since their initial promulgation in 1986 or of the NESHAP General Flare Requirements since their initial promulgation in 1994.

3.    Flares are pollution control devices designed to destroy organic pollutants in waste gases, which include hazardous pollutants and smog-forming compounds, through the combustion process.  The NSPS General Flare Requirements and NESHAP General Flare Requirements establish certain work practices to maximize combustion efficiency and the corresponding destruction of organics in flare gas.  For example, these practices include requiring that "the net heating value of the gas being combusted" in steam- and air-assisted flares be at least 300 Btu per standard cubic foot of gas being combusted (300 Btu/scf), and limitations on "exit velocity" to avoid overwhelming the flare with more gas than it can burn efficiently. *See* 40 C.F.R. § 60.18(c)(3)(ii), (4), (5); 40 C.F.R. § 63.11(b)(6)(ii), (7), (8).

4.    In the decades since the NSPS General Flare Requirements' and NESHAP General Flare Requirements' initial promulgation, these standards no longer reflect the "the best system of emission reduction" under Clean Air Act section 111(a)(1), 42 U.S.C. § 7411(a)(1), or "maximum degree of reduction in emissions" achievable under section 112(d)(2) of the Clean Air Act.  *See* 42 U.S.C. § 7412(d)(2).  For example, the minimum heating values required under the NSPS General Flare Requirements and NESHAP General Flare Requirements apply to the so-called "vent gas" that enters the bottom of the flare.  Industry studies and EPA's own research have confirmed that because monitoring is poor or infrequent, vent gas is often incorrectly assumed to have the required minimum heating value when it does not.  And for steam- and air-assisted flares, actual heating values can be much lower in the combustion zone at the flare tip

than they are in the vent gas routed to that flare because operators often add too much steam or air during the combustion process, lowering the flare's combustion efficiency and consequently increasing emissions of pollutants that the flare is meant to control.

5.     Furthermore, operators rely on the NSPS General Flare Requirements and NESHAP General Flare Requirements to assure regulators that their flares will achieve certain destruction efficiencies, which in turn are used to estimate emissions, determine compliance with applicable limits, and determine the flares' potential to emit.  Regulated industries, and regulators in turn, often assume that compliance with the NSPS General Flare Requirements and NESHAP General Flare Requirements will eliminate 98 percent of organic pollutants sent to the flare.  Based on EPA's own data and findings, however, the actual destruction efficiency of flares operating under these outdated requirements can be 90 percent or even lower, meaning that emissions are five or more times higher than estimated or reported by plant operators.

6.     The failure to review the NSPS General Flare Requirements and NESHAP General Flare Requirements is harmful because the available evidence, including EPA's own analysis, shows that flares subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements operate far below the desired 98-percent destruction efficiency, releasing correspondingly larger quantities of pollutants that are toxic, smog-forming, or otherwise hazardous to the health of nearby communities.  Industrial facilities with flares subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements—such as petrochemical facilities, oil and natural gas production and processing facilities, bulk gasoline terminals, and municipal solid waste landfills—are disproportionately located in and near communities of color and lower-income communities.  As a result, these communities have higher incidences of asthma and other respiratory ailments.  Most recently, these same

communities have been disproportionately affected by COVID-19, making the cumulative effects on the communities' respiratory health greater and the excess emissions from flares subject to the outdated NSPS General Flare Requirements and NESHAP General Flare Requirements all the more significant.

7.      Consequently, Plaintiffs bring this action to seek a determination by this Court that the Administrator's failures to fulfill each overdue duty and perform each action required by sections 111(b)(1)(B) and 112(d)(6) violate the Clean Air Act and to seek an order by this Court compelling the Administrator to fulfill each duty and take each required action in accordance with expeditious deadlines set by this Court.

## JURISDICTION AND VENUE

8.      This action arises under the Clean Air Act's citizen suit provision.  42 U.S.C. § 7604(a)(2).

9.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

10.     This Court may award Plaintiffs all necessary relief pursuant to 42 U.S.C. § 7604(a)(2) and 28 U.S.C. §§ 2201-2202.

11.     Plaintiffs have provided Defendant with at least sixty days' written notice of the violations of law alleged herein in the form and manner required by the Clean Air Act.  42 U.S.C. § 7604(b)(2); 40 C.F.R. Part 54.  Copies of Plaintiffs' notice letters are attached as Exhibit A and Exhibit B to this Complaint.

12.     Venue is vested in this Court under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims occurred in this district and the Administrator's office is in the District of Columbia.

**PARTIES**

The Plaintiffs

13.     Plaintiff Environmental Integrity Project (EIP) is a national nonprofit organization existing and organized under the laws of the District of Columbia.  EIP is dedicated to advocating for more effective enforcement of environmental laws.  EIP has three goals: (1) to provide objective analyses of how the failure to enforce or implement environmental laws increases pollution and affects public health; (2) to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws; and (3) to help local communities obtain the protection of environmental laws.

14.     Plaintiff Clean Air Council ("Council") is a nonprofit, member-based environmental organization headquartered in Philadelphia, Pennsylvania.  For more than 50 years, the Council has fought to improve the air quality across Pennsylvania and Delaware.  The Council's mission is to protect everyone's right to a healthy environment.

15.     Plaintiff Air Alliance Houston is a research-based nonprofit organization that advocates in partnership with communities disproportionately burdened by air pollution for public policies that improve air quality, promote public health, and advance environmental justice.

16.     Plaintiff Chesapeake Climate Action Network (CCAN) is a grassroots, nonprofit organization founded to transition the region towards clean-energy solutions to climate change, specifically in Maryland, Virginia, and Washington, D.C.  CCAN's mission is to educate and mobilize citizens in a way that fosters a rapid societal switch to clean energy sources.  This mission includes ensuring that facilities that contribute to global warming do not impact the health of CCAN's members or the environment through the release of dangerous pollutants.

17.     Plaintiff Earthworks is a nonprofit organization dedicated to protecting communities and the environment from the impacts of irresponsible mineral and energy development while seeking sustainable solutions.  Earthworks fulfills its mission by working with communities and grassroots groups to reform government policies, improve corporate practices, influence investment decisions, and encourage responsible materials sourcing and consumption.

18.     Plaintiff Environment America is a national, member-supported, nonprofit organization existing and organized under the laws of the state of Colorado. It has hundreds of thousands of members across the country. Environment America's mission is to transform the power of our imaginations and our ideas into change that makes our world a greener and healthier place for all. Environment America's staff of organizers, advocates, and lawyers use research, advocacy, and litigation to work for clean air, clean water, clean energy, wildlife and open spaces, and a livable climate.

19.     Plaintiff Environment Texas is the name under which Environment America does business in Texas.  Environment Texas advocates for clean air, clean water, and the preservation of Texas' natural resources.

20.     Plaintiff Hoosier Environmental Council is a nonprofit public-interest environmental advocacy corporation organized and existing under Indiana law. Hoosier Environmental Council is Indiana's largest environmental public policy organization, working to improve environmental health, protect land and water, and foster a sustainable economy for thirty-seven years, through education, technical assistance, and advocacy.

21.     Plaintiff PennEnvironment is a nonprofit, member-supported environmental organization existing and organized under the laws of the commonwealth of Pennsylvania.

PennEnvironment advocates for clean air, clean water, and the preservation of Pennsylvania's natural resources.  It has over 11,000 members across Pennsylvania.

22.    Plaintiff Texas Campaign for the Environment (TCE) is a nonpartisan, nonprofit organization dedicated to informing and mobilizing Texans to protect the quality of their lives, their health, their communities, and the environment.  TCE works to hold government and corporations accountable to public concern on Texas health, environmental, and economic issues.  TCE promotes policies that protect our air, water, and citizens' right to know about pollution in their communities.

23.    Plaintiffs bring this action on behalf of themselves and their members.

24.    Plaintiffs and their members have been and continue to be adversely affected by Defendant's failure to review and, where appropriate or necessary, revise the NSPS General Flare Requirements and NESHAP General Flare Requirements required in accordance with sections 111(b)(1)(B) and 112(d)(6), 42 U.S.C. §§ 7411(b)(1)(B), 7412(d)(6), within the timeframes required by the Clean Air Act.

25.    Plaintiffs' members include individuals who live, work, or recreate near industrial facilities with flares that are subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements, including petrochemical facilities, oil and natural gas production and processing facilities, bulk gasoline terminals, municipal solid waste landfills, and volatile organic liquid storage vessels.

26.    Due to the Administrator's ongoing failures to take the actions required by sections 111(b)(1)(B) and 112(d)(6), 42 U.S.C. §§ 7411(b)(1)(B), 7412(d)(6), the NSPS General Flare Requirements and NESHAP General Flare Requirements remain outdated, and flares

subject to these standards do not operate at the expected destruction efficiency, releasing excess harmful, toxic, and smog-forming pollutants into the air.

27.    Plaintiffs' members have encountered harmful, toxic, and smog-forming pollutants emitted from facilities subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements in the past and/or reasonably fear that they will encounter these emissions in the future.  Plaintiffs' members also have a reasonable concern about suffering harm to their health, aesthetic, recreational, and other interests due to exposure to harmful, toxic, and smog-forming pollutants emitted by facilities subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements.  Plaintiffs' members enjoy natural resources that are or are likely to be adversely affected by these emissions.  Plaintiffs' members have regularly faced and currently live subject to the likelihood of continuing to experience emissions from these facilities that undermine their ability to live their lives and follow day-to-day routines and threaten their ability to enjoy being inside their homes, as well as their ability to walk, bike, garden, play, or sit outside near their home.

28.    The Administrator's failure to conduct the statutorily mandated review and, where appropriate or necessary, revise the NSPS General Flare Requirements and NESHAP General Flare Requirements prolongs Plaintiffs' members' exposures, risks, and reasonable fears.

29.    The Administrator's failure to review and make necessary revisions to the NSPS General Flare Requirements and NESHAP General Flare Requirements has also harmed Plaintiffs' abilities to fulfill and achieve their organizational objectives of protecting their members, their communities, the environment, and the public from the human health and environmental risks of emissions from facilities within categories subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements.

30.    Plaintiffs' missions also include public education, advocacy, public health research, community air quality monitoring, and litigation to enforce and strengthen environmental laws and to prevent, reduce, and mitigate toxic air pollution and its adverse effects, including from facilities within the categories subject to the NSPS General Flare Requirements and NESHAP General Flare Requirements.  As part of and in furtherance of their missions, Plaintiffs analyze and provide their members and the public, in person and through media, with information regarding the adverse impacts of air pollution and the potential for stricter pollution controls from these facilities.  It is a core part of Plaintiffs' missions to provide this type of information and educational service to their members to assist their members in advocating for greater protection for their health, aesthetic, recreational, and other legally protected interests.  As a result of the outdated NSPS General Flare Requirements and NESHAP General Flare Requirements, the actual and potential emissions from such facilities are likely not properly estimated.  Estimates of facilities' emissions rely on their flares' destruction efficiency, and flares subject only to the NSPS General Flare Requirements and NESHAP General Flare Requirements often fail to perform at the expected efficiency.

31.    These injuries to Plaintiffs and Plaintiffs' members would be redressed by a declaratory judgment that Administrator's failure to conduct the statutorily mandated review of the NSPS General Flare Requirements and NESHAP General Flare Requirements in accordance with Clean Air Act sections 111(b)(1)(B) and 112(d)(6), 42 U.S.C. §§ 7411(b)(1)(B), 7412(d)(6), within the statutorily required timeframes violates the Clean Air Act and by an order compelling the Administrator to review the NSPS General Flare Requirements and NESHAP General Flare Requirements and either promulgate revisions or make a final determination that such revisions are not necessary by a date certain.

The Defendant

32.     Defendant Andrew Wheeler, Administrator of EPA, is the federal official responsible for EPA's administration of its legal authorities and duties, including the duties under the Clean Air Act to review and, where appropriate, revise the NSPS General Flare Requirements in accordance with section 111(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(B), and to review and, where necessary, revise the NESHAP General Flare Requirements in accordance with the requirements of section 112(d)(6) of the Clean Air Act, 42 U.S.C. § 7412(d)(6).

33.     Plaintiffs sue Administrator Wheeler in his official capacity.

## STATUTORY AND REGULATORY FRAMEWORK

34.     The Clean Air Act was established "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population" and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b).

35.     A "primary goal" of the Clean Air Act is "pollution prevention."  42 U.S.C. § 7401(c).

36.     In furtherance of these goals, the Clean Air Act prescribes a regulatory framework that mandates EPA to set and periodically review standards of performance for new sources of air pollution and standards that limit hazardous air pollutants (HAP).

37.     Section 111 of the Clean Air Act requires the Administrator to publish a list of categories of stationary sources that "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7411(b)(1)(A).

For each category, the Administrator must establish "Federal standards for performance of new sources within such category."  42 U.S.C. § 7411(b)(1)(B).

38.    Once the Administrator has promulgated performance standards for new sources within a category, section 111 requires that "[t]he Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedure required by this subsection for promulgation of such standards."  *Id.*  "Notwithstanding the requirements of the previous sentence, the Administrator need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard."  *Id.*

39.    Section 111(h) allows the Administrator, where he has determined "it is not feasible to prescribe or enforce a standard of performance," to "instead promulgate a design, equipment, work practice, or operational standard, or combination thereof, which reflects the best technological system of continuous emission reduction . . . ."  *See* 42 U.S.C. § 7411(h)(1).  Any such "design, equipment, work practice, or operational standard, or any combination thereof . . . shall be treated as a standard of performance," including with respect to the eight-year review and revision deadlines of subsection (b).  *See* 42 U.S.C. § 7411(h)(5).

40.    As revised by the 1990 Clean Air Act Amendments, section 112 of the Act sets out requirements for the regulation of sources of hazardous air pollutants.  42 U.S.C. § 7412.  The Administrator must establish a list of categories of major sources of hazardous air pollutants.  42 U.S.C. § 7412(c)(1).

41.    Under section 112(d), the Administrator must promulgate regulations establishing emission standards for each category or subcategory of major sources and area sources of hazardous air pollutants.  42 U.S.C. § 7412(d)(1)-(3).  Thereafter, "[t]he Administrator shall

review, and revise as necessary (taking into account developments in practices, processes, and control technologies), emission standards promulgated under this section no less often than every 8 years." 42 U.S.C. § 7412(d)(6).

## FACTUAL BACKGROUND

The NSPS General Flare Requirements

42.     EPA first promulgated the NSPS General Flare Requirements set forth in 40 C.F.R. § 60.18(b)-(f) in January 1986 under the "General Provisions" of 40 C.F.R. Part 60. *See* EPA, Equipment Leaks from Synthetic Organic Chemical Manufacturing Industry; Natural Gas Processing Plants; Equipment Leaks of Benzene Flare Requirements, 51 Fed. Reg. 2,699 (Jan. 21, 1986).

43.     EPA's rulemaking for the NSPS General Flare Requirements began as part of a reconsideration proceeding regarding flare standards for one specific stationary source category, but "EPA also determined that the revised exit velocity limitation for flares should apply to several other standards in Parts 60 and 61." For this reason, EPA decided to promulgate standards for flares used as control devices that would apply to multiple subparts under 40 C.F.R. Part 60 and Part 61—including, at that time, Subparts VV, NNN and Kb of 40 C.F.R. Part 60 and Subparts L and V of Part 61—"plac[ing] the flare requirements in the General Provisions of Part 60 for easy reference by all subparts in Part 60 and Part 61." *Id.* at 2,701.

44.     EPA based the NSPS General Flare Requirements on identical flare requirements that it promulgated in 1985 for Subpart KKK of Part 60—natural gas processing plants—and the agency simultaneously amended that subpart's requirements to reference the General Flare Requirements instead. *Id.*

13

45.     To date, at least sixteen subparts under 40 C.F.R. Part 60 incorporate the NSPS

General Flare Requirements by reference:

- Subparts Cc, Cf, WWW, and XXX (Municipal solid waste landfills);

- Subpart Kb (Volatile organic liquid storage vessels);

- Subparts VV and VVa (Synthetic organic chemical manufacturing industry (SOCMI) equipment leaks);

- Subpart XX (Bulk gasoline terminals);

- Subpart DDD (Polymer manufacturing industry);

- Subpart III (SOCMI air oxidation unit processes);

- Subpart KKK (Onshore natural gas processing plants);

- Subpart NNN (SOCMI distillation operations);

- Subpart QQQ (Petroleum refinery wastewater systems; and

- Subpart RRR (SOCMI reactor processes);

- Subparts OOOO and OOOOa (Oil and natural gas production, transmission, and distribution).

46.     EPA has not conducted the statutorily mandated review of the NSPS General

Flare Requirements within the last eight years, as required by Clean Air Act section

111(b)(1)(B), nor has the Administrator determined that "such review is not appropriate in light

of readily available information on the efficacy of such standard."  42 U.S.C. § 7411(b)(1)(B).

47.     Based on Plaintiffs' review of publicly available records, it appears that EPA has

not conducted the required review of the NSPS General Flare Requirements since their initial

promulgation in 1986.

48.     As provided in Plaintiffs' notice letter dated June 11, 2020, EPA has made minor

amendments to the NSPS General Standards or other subsections of 40 C.F.R. § 60.18 on several

occasions since 1986, but none of these constituted the required review of the standards of performance, nor did any of the amendments take place within the last eight years. The most recent amendment occurred in 2008. *See* Ex. A at 2-4.

49.    Even under the interpretation most favorable to EPA—that the 2008 amendment did constitute the required review—EPA has not conducted the statutorily mandated review of the NSPS General Flare Requirements under section 111(b)(1)(B) within the last eight years. 42 U.S.C. § 7411(b)(1)(B).

The NESHAP General Flare Requirements

50.    EPA first promulgated the NESHAP General Flare Requirements under 40 C.F.R. § 63.11(b) in March 1994 under the "General Provisions" of 40 C.F.R. Part 63. *See* EPA, National Emission Standards for Hazardous Air Pollutants for Source Categories: General Provisions, 59 Fed. Reg. 12,408 (March 16, 1994).

51.    EPA stated that in promulgating the NESHAP General Flare Requirements under the General Provisions of 40 C.F.R. Part 63, it was following "the approach taken previously by the EPA in developing and implementing new source performance standards (NSPS) under section 111 of the Act": i.e., the NSPS General Flare Requirements. *Id.* at 12,411.

52.    EPA stated that the General Provisions of 40 C.F.R. Part 63 "contain provisions that are common to relevant standards such as definitions, and requirements for initial notifications, performance testing, monitoring, and reporting and recordkeeping. The establishment of General Provisions for part 63 standards eliminates the need to repeat common elements in each source category-specific standard." *Id.* EPA also stated that "[t]he General Provisions have the legal force and effect of standards, and they may be enforced independently of relevant standards, if appropriate." *Id.* at 12,408.

53.     EPA has not conducted the statutorily mandated review of the NESHAP General Flare Requirements within the last eight years, as required by Clean Air Act section 112(d)(6). 42 U.S.C. § 7412(d)(6).

54.     Based on Plaintiffs' review of publicly available records, it appears that EPA has not conducted the required review of the NESHAP General Flare Requirements since their initial promulgation in 1994.

55.     Since EPA's 1994 promulgation of the NESHAP General Flare Requirements, EPA has not conducted the statutorily mandated review under Clean Air Act section 112(d)(6). 42 U.S.C. § 7412(d)(6).

56.     As provided in Plaintiffs' notice letter dated August 17, 2020, EPA has made minor amendments to the NESHAP General Standards or other subsections of 40 C.F.R. § 63.11 on several occasions since 1994, but none of these constituted the required review of the emission standards, nor did any of the amendments take place within the last eight years.  The most recent amendment occurred in 2008.  *See* Ex. B at 3-4.

57.     Even under the interpretation most favorable to EPA—that the 2008 amendment did constitute the required review—EPA has not conducted the statutorily mandated review of the NESHAP General Flare Requirements within the last eight years.  42 U.S.C. § 7412(d)(6).

58.     In addition to EPA's failure to conduct the statutorily mandated review of the NESHAP General Flare Requirements themselves, there are presently at least five categories of stationary sources within six subparts under 40 C.F.R. Part 63 that reference and incorporate the NESHAP General Flare Requirements, yet also are overdue for EPA's statutorily mandated review.  *See* EPA, Risk and Technology Review of the National Emissions Standards for Hazardous Air Pollutants, https://www.epa.gov/stationary-sources-air-pollution/risk-and-

technology-review-national-emissions-standards-hazardous (last visited Oct. 23, 2020). These

categories are:

| Source Category | Subpart | Last Revised | Citation |
|---|---|---|---|
| Gasoline Distribution | R<br>BBBBBB | April 2006<br>Jan. 2011 | EPA, Gasoline Distribution MACT and GACT: National Emission Standards for Hazardous Air Pollutants (NESHAP) - 40 CFR 63 Subparts R, BBBBBB & CCCCCC, https://www.epa.gov/stationary-sources-air-pollution/gasoline-distribution-mact-and-gact-national-emission-standards (last visited Oct. 23, 2020). |
| Polymers and Resins I | U | April 2011 (Epichlorohydrin Elastomers, Nitrile Butadiene Rubber, Polybutadiene Rubber, Styrene Butadiene Rubber and Latex)<br><br>Dec. 2008 (Polysulfide Rubber, Ethylene Propylene Rubber, Butyl Rubber, Neoprene) | EPA, National Emission Standards for Hazardous Air Pollutant Emissions: Group I Polymers and Resins, 76 Fed. Reg. 22,566 (April 21, 2011); EPA, National Emission Standards for Hazardous Air Pollutant Emissions: Group I Polymers and Resins, 73 Fed. Reg. 76,220 (Dec. 16, 2008). |
| Pharmaceuticals Production | GGG | April 2011 | EPA, National Emission Standards for Hazardous Air Pollutant Emissions: Group I Polymers and Resins; Marine Tank Vessel Loading Operations; Pharmaceuticals Production; and the Printing and Publishing Industry, 76 Fed. Reg. 22,566 (April 21, 2011). |
| Hazardous Organics NESHAP | G | Dec. 2006 | EPA, National Emission Standards for Organic Hazardous Air Pollutants From the Synthetic Organic Chemical Manufacturing Industry, 71 Fed. Reg. 76,603 (Dec. 21, 2006). |

| Oil and Natural Gas Production | HH | Aug. 2012 | EPA, Oil and Natural Gas Sector: New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants Reviews, 77 Fed. Reg. 49,490 (Aug. 16, 2012); *see*, *e.g.*, 40 C.F.R. § 63.769(c)(8) ("Flares, as defined in § 63.761, used to comply with this subpart shall comply with the requirements of § 63.11(b)."). |

Excess Emissions from Industrial Flares Subject to the NSPS General Requirements and NESHAP General Flare Requirements

59.     A large variety of industrial facilities use flares as pollution control devices designed to destroy the organic pollutants in waste gases through the combustion process, including hazardous pollutants and smog-forming compounds.

60.     In order to ensure maximize combustion efficiency and the corresponding destruction of organics in flare gas, EPA has established certain design and operating requirements under the NSPS General Flare Requirements and NESHAP General Flare Requirements and category-specific standards.  For example, under the NSPS General Flare Requirements, these requirements include that "the net heating value of the gas being combusted" in steam- and air-assisted flares be at least 300 Btu per standard cubic foot of gas being combusted (300 Btu/scf), and limitations on "exit velocity" to avoid overwhelming the flare with more gas than it can burn efficiently.  *See* 40 C.F.R. § 60.18(c)(3)(ii), (4), (5).

61.     On several recent occasions, EPA has determined that the NSPS General Flare Requirements and NESHAP General Flare Requirements are outdated for specific industry sectors, that they lead to the operation of flares with poor destruction efficiency, and that they require revision.

62.     In 2012, EPA published an Enforcement Alert regarding flaring violations, in which the agency recognized that certain needed parameters affecting the efficiency of flares are

not captured within current standards, including maintaining the appropriate steam-to-vent-gas ratio and ensuring that the heating value of combustion zone gas is high enough to maximize combustion efficiency.  The Alert stated that the heating value in the combustion zone gas "is a better indicator of efficiency than the heating value of the Vent Gas alone."  *See* EPA, *EPA Enforcement Targets Flaring Efficiency Violations*, Enforcement Alert, Aug. 2012, *available at* https://www.epa.gov/sites/production/files/documents/flaringviolations.pdf.

63.    Also in 2012, EPA published a proposed rulemaking putting forward certain national uniform emission standards under NESHAP.  *See* EPA, National Uniform Emission Standards for Storage Vessel and Transfer Operations, Equipment Leaks, and Closed Vent Systems and Control Devices; and Revisions to the National Uniform Emission Standards General Provisions, 77 Fed. Reg. 17,898 (March 26, 2012).  While EPA declined to update the NESHAP General Flare Requirements at that time—and, in fact, never finalized the proposed rule—the agency specifically stated that it was "continuing to gather data, review flare research papers and test reports, and investigate operating conditions that may influence the performance of a flare, including situations of over steaming, excess aeration, flame lift off, and high winds," and that EPA "may in the future propose to add new flare requirements" based on this information.  *Id.* at 17,905.

64.    In April 2012, EPA published a report examining "Parameters for Properly Designed and Operated Flares."  EPA noted in particular that reliance on the net heating value of the vent gas—the parameter that the NSPS General Flare Requirements and NESHAP General Flare Requirements use—"as an indicator of good combustion ignores any effect of steaming. Therefore, to incorporate steaming, a net heating value of the combustion zone gas was calculated to include the assist steam."  *See* EPA Office of Air Quality Planning and Standards,

*Parameters for Properly Designed and Operated Flares* 3-32 (April 2012), *available at*

https://www3.epa.gov/airtoxics/flare/2012flaretechreport.pdf.

65.     EPA has also conducted several category-specific rulemakings under NESHAP in

which it revised the categories' standards to remove their incorporation of the NESHAP General

Flare Requirements and replace them with more stringent standards.

66.     For example, in December 2015, EPA promulgated final NESHAP standards

applicable to petroleum refineries.  *See* 40 C.F.R. § 63.670.  Having agreed "that studies have

shown that many refinery flares are operating less efficiently than 98 percent," EPA revised

refineries' "flare operating requirements to ensure that the flares meet the required performance

level."  *See* EPA, Petroleum Refinery Sector Risk and Technology Review and New Source

Performance Standards, 80 Fed. Reg. 75,178, 75,189 (Dec. 1, 2015).

67.     These revised standards include more detailed and specific requirements than the

NESHAP General Flare Requirements to ensure better combustion efficiency for petroleum

refinery flares.  For example, refinery flares now must maintain a minimum net heating value of

the flare combustion zone gas over a 15-minute block period.  The shorter averaging time

reduces the degree to which flares depart from the minimum net heating value, and measurement

of the net heating value at the combustion zone incorporates assist steam or premix assist air

flow into the calculation, limiting the potential for over-assist and over-steaming.  *See* 40 C.F.R.

§ 63.670(e), (m).

68.     Additional flare standards improvements for refineries include that operators must

continuously measure and record the flow rate of all gas streams being flared, as well as any

assist steam or air.  *See* 40 C.F.R. § 63.670(i).  Operators must also continuously monitor the

pilot flame to ensure its presence at all times the flare is in use, with every 15-minute block with

at least a one-minute outage constituting a separate violation.  *See* 40 C.F.R. § 63.670(b), (g).

This clarity is vital to the standards' effectiveness and enforceability.

69.     Similarly, in July 2020, EPA finalized revisions to NESHAP standards for

ethylene production facilities, including revised flare standards that are nearly identical to those

under the refinery NESHAP revisions and more stringent than the NESHAP General Flare

Requirements.  *See* EPA, National Emission Standards for Hazardous Air Pollutants: Generic

Maximum Achievable Control Technology Standards Residual Risk and Technology Review for

Ethylene Production, 85 Fed. Reg. 40,386 (July 6, 2020).

70.     In a memorandum supporting the rulemaking, EPA asserted that ethylene

production facility flares complying only with the NESHAP General Flare Requirements are not

achieving 98-percent destruction efficiency.  Rather, EPA estimated that "the baseline level of

control for all ethylene flares in the source category would fall on average somewhere between

86.6 percent and 94.2 percent"—or 90.4 percent, as "an average of these two numbers."  *See*

Memorandum from Andrew Bouchard to EPA Docket No. EPA-HQ-OAR-2017-0357, Re:

Control Option Impacts for Flares Located in the Ethylene Production Source Category 8 (March

2019), *available at* https://www.regulations.gov/document?D=EPA-HQ-OAR-2017-0357-0017.

EPA identified three primary factors that affect flare performance: the flow of vent gas to the

flare, the amount of assist media (i.e., steam or air) added to the flare, and the combustibility of

the vent gas and assist in the flare's combustion zone (i.e., the net heating value in the

combustion zone, or $NHV_{cz}$).

71.     EPA also estimated that revising the flare standards had the potential to reduce

excess emissions across the ethylene production source category by 1,430 tons per year of

hazardous air pollutants and 13,020 tons per year of volatile organic compounds.  *See* 85 Fed.

Reg. at 40,414. EPA based these estimated reductions on the revised flare standards applying to 102 existing flares. *See* EPA, National Emission Standards for Hazardous Air Pollutants: Generic Maximum Achievable Control Technology Standards Residual Risk and Technology Review for Ethylene Production, 84 Fed. Reg. 54,278, 54,301 (Oct. 9, 2019).

### FIRST CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C. § 7411(b)(1)(B)
### (Failure to Review and, Where Appropriate, Revise the NSPS General Flare Requirements)

72.    Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

73.    Pursuant to section 111(b)(1)(B) of the Clean Air Act, the Administrator has a nondiscretionary and continuing duty to periodically review and, if appropriate, revise the NSPS at least every eight years. *See* 42 U.S.C. § 7411(b)(1)(B). Alternatively, the Administrator must make a determination "that such review is not appropriate in light of readily available information on the efficacy of such standard." *Id.*

74.    This statutory duty applies to the NSPS General Flare Requirements as "design, equipment, work practice, or operational standard[s]" under section 111(h). *See* 42 U.S.C. § 7411(h)(1), (5).

75.    This duty also applies to the NSPS General Flare Requirements through their incorporation as standards of performance for at least sixteen separate subparts under 40 C.F.R. Part 60.

76.    The Administrator has not conducted the statutorily mandated review of the NSPS General Flare Requirements within the last eight years, nor has the Administrator determined that "such review is not appropriate in light of readily available information on the efficacy of such standard." 42 U.S.C. § 7411(b)(1)(B).

77.     Based on a review of publicly available records, the Administrator has not conducted the statutorily mandated review of the NSPS General Flare Requirements or determined that such review is not appropriate since their initial promulgation in 1986.  42 U.S.C. § 7411(b)(1)(B).

78.     Under the most favorable facts to the Administrator, the Administrator has not conducted the statutorily mandated review of the NSPS General Flare Requirements or determined that such review is not appropriate since 2008.

79.     Each day in which the Administrator fails to take these statutorily mandated actions under section 111(b)(1)(B) constitutes a new and ongoing violation of nondiscretionary duties.  *Id.*

80.     The Administrator has thereby failed to perform nondiscretionary acts or duties within the meaning of section 304(a) of the Clean Air Act.  *See* 42 U.S.C. § 7604(a).

## SECOND CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C.  § 7412(d)(6)
### (Failure to Review and, where Necessary, Revise the NESHAP General Flare Requirements)

81.     Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

82.     Pursuant to section 112(d)(6) of the Clean Air Act, the Administrator has a nondiscretionary and continuing duty to periodically review and, if necessary, revise all NESHAP emission standards at least every eight years.  *See* 42 U.S.C. § 7412(d)(6).

83.     This statutory duty applies to the NESHAP General Flare Requirements, which "have the legal force and effect of standards, and . . . may be enforced independently of relevant standards, if appropriate."  *See* 59 Fed. Reg. at 12,408.

84.     This statutory duty also applies to the NESHAP General Flare Requirements through their reference by and incorporation into the standards for at least five categories of stationary sources under 40 C.F.R. Part 63.

85.     The Administrator has not conducted the statutorily mandated review of the NESHAP General Flare Requirements under section 112(d)(6) within the last eight years.  42 U.S.C. § 7412(d)(6).

86.     Based on a review of publicly available records, the Administrator has not conducted the statutorily mandated review of the NESHAP General Flare Requirements since their initial promulgation in 1994.  42 U.S.C. § 7412(d)(6).

87.     Under the most favorable facts to the Administrator, the Administrator has not conducted the statutorily mandated review of the NESHAP General Flare Requirements since 2008.

88.     Additionally, EPA has not conducted the statutorily mandated required review or revision of the emission standards for the five source categories, which reference and incorporate the NESHAP General Flare Requirements, within the last eight years.  42 U.S.C. § 7412(d)(6).

89.     Each day in which the Administrator fails to take these statutorily mandated actions under section 112(d)(6) constitutes a new and ongoing violation of nondiscretionary duties.  *Id.*

90.     The Administrator has thereby failed to perform nondiscretionary acts or duties within the meaning of section 304(a) of the Clean Air Act.  *See* 42 U.S.C. § 7604(a).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment as follows:

A.    Declare that each of the Administrator's failures to complete the statutorily mandated review of the NSPS General Flare Requirements and NESHAP General Flare Requirements constitutes a separate count of the "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2);

B.    Order the Administrator to complete the required review of the NSPS General Flare Requirements—or to make a determination "that such review is not appropriate in light of readily available information on the efficacy of such standard"—in accordance with section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), and, following such review, either to promulgate revised standards for the NSPS General Flare Requirements or to make a final determination that such revision is not necessary, in accordance with expeditious deadlines specified by this Court;

C.    Order the Administrator to complete the required review of the NESHAP General Flare Requirements in accordance with section 112(d)(6), 42 U.S.C. § 7412(d)(6), and either to promulgate revised standards for the NESHAP General Flare Requirements or to make a final determination that such revision is not necessary, in accordance with expeditious deadlines specified by this Court;

D.    Retain jurisdiction of this matter until the Administrator has fulfilled all legal and Court-ordered obligations;

E.    Award Plaintiffs reasonable fees, expenses, and costs, including attorneys' fees associated with this litigation; and

F.    Grant Plaintiffs such further relief as the Court may deem just and proper.

Respectfully submitted this 29th day of October, 2020.

*/s/ Adam Kron*
ADAM KRON (D.C. Bar No. 992135)
Environmental Integrity Project
1000 Vermont Avenue NW, Suite 1100
Washington, DC 20005
(202) 263-4451
(202) 296-8822 (fax)
akron@environmentalintegrity.org

*Attorney for Plaintiffs Environmental
Integrity Project, Clean Air Council, Air
Alliance Houston, Chesapeake Climate
Action Network, Earthworks, Environment
America, Environment Texas, Hoosier
Environmental Council, PennEnvironment,
and Texas Campaign for the Environment*